**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**EASTERN DIVISION**

**WILLIAM COULTER and KIM COULTER** **PLAINTIFFS**

v. **CIVIL CASE NO. 2:24-CV-164-HTW-RPM**

**STATE FARM FIRE AND CASUALTY COMPANY and JOHN DOES 1-10** **DEFENDANTS**

**ORDER**

BEFORE THE COURT is Defendant State Farm Fire and Casualty Company's ("State Farm") Motion to Strike Plaintiffs' Expert Bud Summerall [Dkt. 31]. State Farm filed a supporting memorandum [Dkt. 32]. Plaintiffs William and Kim Coulter ("Plaintiffs" or "the Coulters") have filed a response [Dkt. 38] and memorandum in support thereof [Dkt. 39]. State Farm then filed a reply [Dkt. 42]. Accordingly, this matter is ripe for adjudication.

Having considered the parties' submissions, Summerall's designation and report, his deposition, and the applicable law, this Court grants the Defendant's motion in part and denies it in part for the reasons below.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Coulters own a residence located at 6 Chandeleur Point in Hattiesburg, Mississippi. State Farm insured the residence under a homeowners policy that provided coverage, subject to the policy's terms and exclusions, for "accidental physical loss caused by wind and hail". [Dkt. 1-1 at 2–3]. The Coulters allege that hailstorms struck the residence on June 1, 2021, and April 17, 2022, damaging the roof and other portions of their property beyond repair. *Id*. at 3.

Plaintiffs' claim history contains several dates that require clarification. State Farm's records first identify a claim arising from an alleged May 24, 2021, loss. State Farm inspected the property in connection with that claim on July 12, 2021, and reported that it found no hail damage to the roof. [Dkt. 31-3 at 10; Dkt. 31-4 at 2; Dkt. 31-5]. The May 24, 2021 loss date is not one of the two storm dates alleged in the Plaintiffs' Complaint. [Dkt. 1-1 at 3].

On November 30, 2021, a contractor from Apex Roofing notified State Farm that the Coulters had filed a separate claim attributed to an alleged June 1, 2021, hailstorm. [Dkt. 31-3 at 14; Dkt. 31-6]. State Farm inspected the property on December 13, 2021, and concluded that the roof exhibited no hail damage. [Dkt. 31-3 at 10; Dkt. 31-7]. State Farm later reviewed an estimate and photographs submitted by Mickey Carney on the Coulters' behalf, but determined that the depicted conditions were not storm-related and did not warrant another inspection. [Dkt. 31-3 at 7; Dkt. 31-8].

Walter "Dickie" White (hereinafter, "White") of Titan Roofing Company, on behalf of the Coulters, later inspected the property. White's report states that he performed the inspection on December 26, 2022, and recommended replacing the roof, gutters, and downspouts. [Dkt. 31-3 at 5–6; Dkt. 31-9; Dkt. 38-1 at 38:23–39:2]. State Farm received White's report on February 22-23, 2023. [Dkt. 31-3 at 5–6]. Accordingly, December 26, 2022, is the inspection date stated in White's report; February 23, 2023, is reflected as the date State Farm received his report. White has not been designated as an expert witness, and the record contains no curriculum vitae, affidavit, or deposition testimony from White establishing his qualifications.

On May 31, 2024, the Coulters filed this action against State Farm in the Circuit Court of Lamar County, Mississippi. [Dkt. 1-1].State Farm was served with the Summons and Complaint on September 18, 2024 [Dkt. 1, 1].

In their Complaint, the Coulters asserted claims for breach of contract, declaratory and injunctive relief, bad-faith and other extracontractual damages, and negligence against unnamed defendants, John Does 1-10. *Id*. at 4–7.

On October 17, 2024, obedient to 28 U.S.C. §1446[1], which provided State Farm thirty (30) days to remove the action to federal court, State Farm removed the action to this Court. [Dkt. 1]. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a).[2] The Coulters are Mississippi citizens; State Farm is incorporated in Illinois and maintains its principal place of business there; and the Complaint places more than $75,000 in controversy by demanding contractual, extracontractual, and punitive damages, including $1 million for State Farm's alleged failure to act in good faith. [Dkt. 1 at 3–6; Dkt. 1-1 at 1, 7]. The citizenship of the fictitious defendants, John Does 1-10 does not affect this Court's diversity subject matter jurisdiction. 28 U.S.C. § 1441(b)(1). Those unnamed Defendants will be dismissed from this action[3].

On June 11, 2025, the Coulters designated Bud Summerall as an expert in general contracting and roofing. [Dkt. 19; Dkt. 31-10]. His designation states that he has more than fifty years of construction experience. [Dkt. 31-10 at 1–2]. At his September 9, 2025 deposition, conducted by Zoom videoconference, Summerall testified that he began construction work at age eighteen; had approximately sixty years of experience; had built or worked on thousands of houses,

---

[1] Section 1446 establishes the procedure for removing a civil action from state court. It requires the removing defendant to file in the appropriate federal district court a notice of removal containing "a short and plain statement of the grounds for removal," together with copies of the process, pleadings, and orders served upon that defendant. 28 U.S.C. § 1446(a). Ordinarily, the defendant must file the notice within thirty days after receiving the initial pleading or being served with process. *Id.* § 1446(b)(1). The defendant must then notify the adverse parties and file a copy of the notice with the state court, thereby effecting removal. *Id.* § 1446(d).

[2] Section 1332(a)(1) provides that federal district courts "shall have original jurisdiction of all civil actions" in which the matter in controversy exceeds $75,000, exclusive of interest and costs, and the action is between "citizens of different States." 28 U.S.C. § 1332(a)(1). A corporation is a citizen of every state in which it is incorporated and the state in which it maintains its principal place of business. *Id.* § 1332(c)(1).

[3] When determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. § 1441(b)(1).

and estimated that fifty to seventy percent of his work involved insurance claims. [Dkt. 38-1 at 1, 75:10–76:7].

Summerall also described the limits of his professional background. He testified that he possessed no roofing-manufacturer certification and relied instead on his construction experience. *Id*. at 18:19–19:1. Summerall acknowledged that he had never been employed by an insurance company or licensed as an adjuster; instead, that he performed repair and property-assessment work as an independent contractor for General Adjustment Bureau, an independent insurance-adjusting firm that handled claims for multiple insurance companies. [Dkt. 38-1 at 22:15–25:9]. He further testified that he had never been licensed as an insurance adjuster and had never been employed by an insurance company. *Id*. at 26:15–23.

Summerall's report expresses five opinions: (1)State Farm did not adequately investigate the claim; (2) the roof sustained clear and substantial hail damage on multiple slopes; (3) the roof required replacement and should have been treated as a "total loss"; (4) State Farm's contrary conclusion was unreasonable and professionally unsound; and (5) the replacement of Summerall's own nearby roof after what he believed was the same hailstorm supported his conclusion that the Coulters' roof also sustained hail damage. [Dkt. 31-11 at 2–3]. Summerall testified that the report contained all of his opinions and that his secretary and Plaintiff William Coulter had assisted him in preparing it. [Dkt. 38-1 at 27:7–28:12].

Summerall's testimony, as reflected in the record, is chronologically inconsistent. He first testified that he had viewed the property approximately three times and had first done so "three or four months" before his September 9, 2025, deposition, possibly "no more than six months earlier". *Id.* at 29:5–30:17. Later, he said that he first viewed it "right after the hailstorm," several

years earlier and before White's December 2022 inspection, but that he could not identify the storm, month, or year. *Id.* at 58:1–60:15.

Summerall did not climb onto the Coulters' roof during his inspection; rather, says Summerall, he inspected the roof from the ground, observed granules below the roof, and described a "swept" or cleaned appearance on the shingles. *Id*. at 30:18–31:14. He testified that those conditions, together with roof replacements occurring elsewhere on the neighborhood street, led him to assume that the Coulters' roof had sustained hail damage. *Id*. at 30:21–31:10. Summerall did not take photographs or videos during any of his visits to the property. *Id*. at 55:13–25.

Summerall did, however, rely on White's report and its accompanying sixty-six photographs. *Id*. at 34:2–36:25. He testified that he reviewed White's report before preparing his own report, although he could not recall when he first reviewed it; he said that he reviewed White's photographs approximately one week before his deposition. *Id*. at 34:8–23. Summerall did not speak with White about White's inspection, report, or photographs concerning the Coulter property. *Id*. at 37:5–38:22. He testified that he had known White for approximately eight to ten years through General Adjustment Bureau and had followed behind White on several prior matters to provide a second opinion, but the two had not otherwise worked together. *Id*. at 37:9–38:22. Summerall believed the December 26, 2022, inspection date shown on White's report was accurate, but he did not know when White prepared the report or took the accompanying photographs. *Id*. at 38:23–39:8.

Summerall reviewed no weather data and acknowledged that several storms had occurred. [Dkt. 38-1 at 60:16–61:19]. Although he later estimated that a neighborhood hail event occurred in 2021, he could not identify which storm damaged the Coulters' roof, or whether it was the same

event that damaged his own home. *Id.* at 63:16–67:5. On redirect examination, he stated expressly, "I can't tell you which storm caused it." *Id.* at 73:4–18.

State Farm now moves to exclude Summerall's report, opinions, and testimony in their entirety. [Dkt. 31]. State Farm challenges both his qualifications to offer insurance-adjusting and claim-handling opinions and the reliability of his methodology for attributing the roof's condition to a covered storm. [Dkt. 32].

The Coulters respond that Summerall's extensive construction and roofing experience qualifies him to identify physical conditions consistent with hail damage and to determine whether those conditions require repair or replacement. [Dkt. 39 at 2–3]. They contend that Summerall based his opinions on his own observations of displaced granules and the swept appearance of the shingles, his comparison of the Coulters' roof with other roofs in the neighborhood, and his review of White's report and photographs. *Id.* According to the Coulters, Summerall used White's materials to corroborate—not replace—his independent assessment; therefore, any dispute concerning his reliance on those materials or the factual basis of his conclusions affects the weight and credibility of his testimony, rather than its admissibility. *Id.* at 3–5. Finally, the Coulters contend that the remote deposition format and accompanying communication difficulties contributed to the apparent inconsistencies in Summerall's testimony.

With the parties' competing positions and the scope of Summerall's proposed testimony thus defined, the Court turns to the standards governing the admissibility of expert testimony.

## II. LEGAL STANDARD

Federal evidentiary law governs the admissibility of expert testimony in this diversity action. *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009). Under Federal Rule of Evidence 702[4],

[4] Federal Rule of Evidence 702 provides: "A witness who is qualified as an expert by knowledge, skill, experience,

the proponent must demonstrate to the Court that it is more likely than not that the proposed expert testimony will help the factfinder, rests on sufficient facts or data, is the product of reliable principles and methods, and reflects a reliable application of those principles and methods to the case. Fed. R. Evid. 702(a)-(d). The proponent bears the burden of establishing admissibility by a preponderance of the evidence. *Mathis v. Exxon Corp*., 302 F.3d 448, 459-60 (5th Cir. 2002). That burden applies to Rule 702's threshold requirements[5]; it does not require the proponent to establish that the expert's ultimate conclusion is correct. *Moore v. Ashland Chemical Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc).

Rule 702 assigns the trial court a "gatekeeping" role: expert testimony must be both relevant and reliable. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589, 592-93 (1993). That obligation extends beyond scientific testimony to technical and other specialized knowledge. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). The inquiry is flexible, and the Court has broad discretion to determine how to assess reliability in the circumstances presented. *Id*. at 150, 152.

---

training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case."

[5] Rule 104(a) provides that "[t]he court must decide any preliminary question about whether . . . evidence is admissible." Fed. R. Evid. 104(a). Thus, the Court—not the jury—determines whether proposed expert testimony satisfies Rule 702. The jury evaluates the credibility and weight of expert testimony only after the Court determines that the testimony is admissible, and the jury remains free to accept or reject the expert's ultimate conclusion. See *Mathis*, 302 F.3d at 461; *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002). The 2023 Advisory Committee Note likewise confirms that the sufficiency of an expert's factual basis and the reliability of the expert's application of a methodology are questions of admissibility, not merely matters of weight. Fed. R. Evid. 702 advisory committee's note to 2023 amendment.

A court evaluating reliability may consider whether the expert's theory or technique can be tested, whether it has undergone peer review, its known or potential error rate, the existence of standards controlling its operation, and its acceptance within the relevant field. *Daubert*, 509 U.S. at 593–94. Those considerations are neither exclusive nor mandatory in every case, particularly when the proposed testimony rests on technical knowledge or practical experience rather than a scientific methodology. *Kumho Tire*, 526 U.S. at 150–52; *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007).

This Court, then, must evaluate separately whether the witness is qualified and whether each proposed opinion is reliable. *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999); *Hathaway*, 507 F.3d at 318. A witness may qualify through knowledge, skill, experience, training, or education, and practical experience may provide an adequate foundation for testimony within the witness's field. Fed. R. Evid. 702; *Christophersen v. Allied-Signal Corp.*, 939 F.2d 1106, 1110–11 (5th Cir. 1991) (en banc) (per curiam). Qualification in one field, though, does not authorize the witness to offer opinions outside that field. *Wilson*, 163 F.3d at 937. Nor do extensive credentials relieve the proponent of establishing that the particular opinion rests on sufficient facts and a reliable methodology. *Hathaway*, 507 F.3d at 318–19.

When an expert relies principally on experience, the expert must connect that experience to the conclusion offered and explain how the expert applied it reliably to the facts presented. *Hathaway*, 507 F.3d at 318–19; *Brown v. Illinois Central Railroad Co.*, 705 F.3d 531, 536–37 (5th Cir. 2013).[1] The governing inquiry is whether the witness employed in forming the litigation opinion "the same level of intellectual rigor" that characterizes the work of an expert in the relevant field. *Kumho Tire*, 526 U.S. at 152. A witness's credentials and assurances that the conclusion

follows from experience do not, standing alone, satisfy Rule 702. *Hathaway*, 507 F.3d at 318–19; *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 424 (5th Cir. 1987).

Reliability must exist at each material step of the analysis, including the method selected, the facts on which the expert relies, and the reasoning connecting those facts to the ultimate opinion. *Seaman v. Seacor Marine LLC*, 326 F. App'x 721, 725 (5th Cir. 2009). A court may exclude an opinion when the expert supplies only his own assurance that the conclusion is correct, or when "there is simply too great an analytical gap between the data and the opinion proffered." *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997); *Hathaway*, 507 F.3d at 318–19.

Notably, the Court's gatekeeping responsibility does not authorize it to decide which expert is correct, or to replace the jury's assessment of competing evidence. *Puga v. RCX Solutions, Inc.*, 922 F.3d 285, 294 (5th Cir. 2019). Once an opinion satisfies Rule 702's threshold requirements, disputes concerning the factual basis of the opinion ordinarily affect its weight and may be explored through cross-examination and contrary evidence. *Id.*; *Primrose Operating Co. v. National American Insurance Co.*, 382 F.3d 546, 562–63 (5th Cir. 2004). That principle does not require admission of an opinion whose factual foundation is so deficient that the opinion would not assist the factfinder. *Viterbo*, 826 F.2d at 422. A fundamentally unsupported opinion offers no expert assistance and may be excluded under Rules 702 and 403. *Id.*; *Hathaway*, 507 F.3d at 318–19.

Rule 703 permits an expert to rely on otherwise inadmissible facts or data when experts in the relevant field would reasonably rely on information of that type. Fed. R. Evid. 703; *Christophersen*, 939 F.2d at 1110–11. Thus, an expert need not personally perform every inspection, test, or measurement underlying the opinion. *Christophersen*, 939 F.2d at 1110–11. The testifying expert, nevertheless, must apply his own expertise to the information and may not

merely transmit another person's opinions to the jury. *Factory Mutual Insurance Co. v. Alon USA L.P.*, 705 F.3d 518, 524–25 (5th Cir. 2013). Rule 703 also does not make the underlying inadmissible material independently admissible merely because an expert considered it. *Id.* at 524.

Federal Rule of Evidence 403 supplies additional safeguards, such that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." This Court also may limit cumulative testimony and exclude opinions that merely state legal conclusions, or speculate about a party's subjective intent. See *Askanase v. Fatjo*, 130 F.3d 657, 672-73 (5th Cir. 1997).

Finally, while an expert may assist the jury in understanding industry practices and technical matters, the expert may not instruct the jury on the governing law or offer legal conclusions reserved for the Court. *Goodman v. Harris County*, 571 F.3d 388, 399 (5th Cir. 2009); *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983).

## III. DISCUSSION

### A. Qualifications and Permissible Testimony

State Farm first contends that Summerall lacks the education, training, and credentials necessary to offer any expert opinion. [Dkt. 32 at 7–10]. The Coulters respond that his decades of construction and roofing work qualify him to identify physical roof conditions consistent with hail and to determine, as a construction matter, whether those conditions require repair or replacement. [Dkt. 39 at 2–3].

Rule 702 expressly recognizes qualification by "knowledge, skill, experience, training, or education," and the Fifth Circuit permits practical experience to qualify a witness within the field that experience actually covers. Fed. R. Evid. 702; *Wilson*, 163 F.3d at 937; *Christophersen*, 939

F.2d at 1110–11. Summerall testified to approximately sixty years in construction, work on thousands of homes, and substantial experience with roofing projects arising from insurance claims. [Dkt. 38-1 at 75:10–76:11]. His lack of a college degree or manufacturer certification affects the breadth and weight of his testimony, but it does not categorically disqualify him from explaining ordinary construction and roofing matters within that experience. *Puga*, 922 F.3d at 293–94.

That qualification does not establish the admissibility of every conclusion in Summerall's report. *Hathaway*, 507 F.3d at 318–19. Summerall inspected the roof only from the ground and took no photographs. [Dkt. 38-1 at 30:18–31:14, 55:13–25]. From the ground, he observed numerous roofing granules on the ground and assumed that hail had caused their loss, explaining that hail can sweep across and “clean” a roof in a manner similar to pressure-washing a vehicle. *Id.* at 30:21–31:10. The Coulters' brief also refers to bruising, exposed matting, and impacts to soft metals, but Summerall derived those features from White's report and photographs, not from his own roof-level inspection. [Dkt. 39 at 2–3; Dkt. 38-1 at 34:2–36:25]. Counsel's characterization cannot enlarge the methodology the witness actually described. See *Brown*, 705 F.3d at 536–37.

Subject to a proper foundation at trial, Summerall may describe his ground-level observations, explain the roofing significance of those observations, identify specific physical conditions depicted in authenticated photographs that his experience tells him are consistent with hail impact, and discuss whether those physical conditions ordinarily call for repair or replacement as a construction matter. *See* Fed. R. Evid. 702; *Kumho Tire*, 526 U.S. at 150–52. For each opinion, however, he must identify the facts he considered and explain how his construction experience supports the inference drawn. See *Hathaway*, 507 F.3d at 318–19; *Brown*, 705 F.3d at 536–37. He

may not simply announce that the roof has "hail damage" or is a "total loss" without first supplying that connection. See *Joine*r, 522 U.S. at 146.

Within those limits, the weaknesses State Farm identifies—including the ground-level vantage point, absence of contemporaneous photographs, and lack of formal engineering training—may be explored through cross-examination because they bear on the credibility and weight of an otherwise experience-based physical-condition opinion. See *Puga*, 922 F.3d at 294; *Primrose*, 382 F.3d at 562–63. Those same principles, though, do not save Summerall's storm-specific or claims-handling opinions, which lack the threshold qualifications or methodology discussed below. See *Hathaway*, 507 F.3d at 318–19.

**B. Reliance on White's Report and Photographs**

State Farm argues that Summerall improperly adopted the opinions of White, an undesignated witness whose qualifications and methods have not been established. [Dkt. 32 at 10–13; Dkt. 42 at 3–5]. The Coulters answer that Summerall used White's report and photographs to corroborate—not replace—his own assessment, so any disagreement with that reliance concerns weight rather than admissibility. [Dkt. 39 at 3–5].

Rule 703 permits a qualified expert to consider information gathered by another person when experts in the field would reasonably rely on that type of information. Fed. R. Evid. 703; Christophersen, 939 F.2d at 1110–11. An expert may analyze another professional's data and reach an independent conclusion. N*ational Union Fire Insurance Co. of Pittsburgh, Pa. v. Smith Tank & Steel, Inc*, No. 3:11-CV-830, 2014 WL 5794952, at *4 (M.D. La. Nov. 6, 2014). The witness, though, may not merely repeat the other person's opinion or lend it the imprimatur of his credentials. Factory Mutual, 705 F.3d at 524–25; see also S*choen v. State Farm Fire & Casualty Co.,* 638 F. Supp. 3d 1339, 1349 (S.D. Ala. 2022).

The record supports a limited use of White's materials, not wholesale adoption. Summerall had known White through General Adjustment Bureau and had previously checked his work, but he never discussed this inspection with White. [Dkt. 38-1 at 37:5–38:22, 74:17–75:1]. He did not know when the photographs were taken, and the present record does not establish White's qualifications or methodology. *Id.* at 38:23–39:8; Dkt. 31-10. Those deficiencies preclude Summerall from simply conveying White's findings that the roof sustained hail damage or required replacement See *Factory Mutual*, 705 F.3d at 524–25; but these findings do not necessarily prevent Summerall from applying his own construction experience to particular physical features visible in authenticated photographs. *See* Fed. R. Evid. 703; *National Union*, 2014 WL 5794952, at *4.

Accordingly, before offering an opinion based on White's materials, the Coulters must establish that roofing or construction experts reasonably rely on photographs or reports of this kind. Fed. R. Evid. 703. Summerall then must identify the particular physical condition depicted in each photograph on which he relies and explain, based on his own construction and roofing experience, how that condition supports his opinion.. See *Hathaway*, 507 F.3d at 318–19. He may not simply repeat White's conclusions or act as White's conduit. *Factory Mutual*, 705 F.3d at 524–25. This ruling does not independently admit White's report or photographs; objections concerning authentication, hearsay, Rule 403, and Rule 703 disclosure are reserved for trial. *See* Fed. R. Evid. 703.

### C. Attribution to a Particular Storm

State Farm next argues that Summerall cannot reliably connect any roof condition to either pleaded loss date. [Dkt. 32 at 13–16]. The Coulters emphasize his comparison of their roof to nearby roofs, including his own, is a matter of disagreement over the causal correlation basis which goes to weight. [Dkt. 39 at 3–5]. An expert's method must reliably fit the facts the opinion purports

to resolve; here, the absence of a reasoned connection to a particular storm is an admissibility defect, not merely a matter of credibility. Fed. R. Evid. 702(d); *Johnson v. Arkema, Inc*., 685 F.3d 452, 459 (5th Cir. 2012); *Seaman*, 326 F. App'x at 725.

Summerall reviewed no meteorological data, acknowledged multiple storms, and did not know when White's photographs were taken. [Dkt. 38-1 at 38:23–39:8, 60:16–61:19]. He first said that his own inspection occurred only months before the September 2025 deposition, then said that he viewed the property several years earlier after an unidentified hailstorm. *Id.* at 29:5–30:17, 58:1–60:15. Although he later estimated that a neighborhood hail event occurred in 2021, he repeatedly stated that he could not identify which storm caused the condition at the Coulter property. *Id.* at 63:16–67:5, 73:4–18.

The neighborhood comparison does not bridge that gap. Neither Summerall's report nor his deposition identifies a controlled comparison[6] of the Coulter roof with his own roof or other nearby roofs, and he could not identify the storm that damaged his residence. [Dkt. 31-11 at 2–3; Dkt. 38-1 at 63:16–67:5]. The comparison may explain why he looked for hail-related conditions, but it does not reliably establish that the same event caused conditions on different properties. See Joiner, 522 U.S. at 146; *Seaman*, 326 F. App'x at 725.

Whether Summerall may attribute the roof condition to June 1, 2021, April 17, 2022, or any other particular storm or date, and whether the dates of neighborhood roof replacements provide expert proof of a common causative event are jury questions. Prior to receiving such testimony, though, this Court must hear same outside the presence of the jury. *See* Fed. R. Evid. 702(b)–(d); *Johnson*, 685 F.3d at 459. A factfinder may still evaluate properly supported testimony

[6] A controlled comparison is a research method used to examine the relationship between an independent variable and a dependent variable while holding constant other potential rival variables

concerning physical conditions and the limitations of Summerall's ground-level observations. See *Puga*, 922 F.3d at 294.

**D. Claims Handling, Coverage, and Legal Conclusions**

Summerall also opines in his report that State Farm's investigation was inadequate and unreasonable and that its coverage decision was professionally unsound. [Dkt. 32 at 11-13]. Qualification is measured against the particular subject of the opinion. Wilson, 163 F.3d at 937. Summerall has never been a licensed adjuster nor an insurance-company employee. [Dkt. 38-1 at 26:15–23]. His experience repairing insured properties may qualify him to address construction, but it does not establish expertise in insurer investigation protocols, claim-file practices, policy interpretation, or adjustment standards. See *Wilson*, 163 F.3d at 937; *Hathaway*, 507 F.3d at 318.

The methodology is independently deficient. Summerall gave inconsistent answers about the claim materials he reviewed, but ultimately confirmed that he had not reviewed State Farm's complete claim file. [Dkt. 38-1 at 41:9–48:14]. Summerall was not present during State Farm's inspections and had no communications with State Farm concerning the Coulters' claim. [Dkt. 38-1 at 56:1–12]. He also testified that he had neither discussed the claim with Mickey Carney—who submitted an estimate and photographs to State Farm on the Coulter's behalf—nor reviewed Carney's photographs. [Dkt. 31-3 at 7; Dkt. 31-8; Dkt. 38-1 at 56:13–18]. He identified no insurer standard or investigative protocol and did not compare State Farm's conduct against one. *Id.* at 70:2–11, 79:4–18, 81:6–82:15. Seemingly, Summerall deemed State Farm's investigation inadequate based solely on its denial of a claim he believed should have been paid. That circular reasoning treats disagreement with the outcome as proof of a deficient investigation, but identifies no reliable claims-handling methodology. See *Brown*, 705 F.3d at 536–37.

*Dunn v. State Farm Fire & Casualty Co*. illustrates the distinction. In *Dunn*, the proposed claims-handling expert had served as a licensed adjuster, insurance attorney, vice president overseeing special investigations, senior internal-audit officer, and insurance consultant., 2024 WL 2835314, at *3 (S.D. Miss. June 4, 2024). Summerall has no comparable adjustment experience. [Dkt. 38-1 at 23:23–26:23]. This Court therefore excludes ,as it must, his opinions that State Farm's investigation or claim handling was inadequate, unreasonable, professionally unsound, or contrary to industry standards. *See* Fed. R. Evid. 702; *Wilson*, 163 F.3d at 937; *Brown*, 705 F.3d at 536–37.

Summerall also may not opine that the policy affords coverage, that the Coulters are entitled to benefits, that the roof is a "total loss" under the policy, that State Farm lacked an arguable basis, or that State Farm acted in bad faith. Experts may not interpret the policy or state legal conclusions. *Goodman*, 571 F.3d at 399; *Owen*, 698 F.2d at 240. Whether an insurer had an arguable basis is a question of law for the Court. *Broussard v. State Farm Fire & Casualty Co.*, 523 F.3d 618, 628 (5th Cir. 2008). Summerall may discuss replacement only as a construction remedy for a physical condition, not as a coverage conclusion. See *Goodman*, 571 F.3d at 399.

**E. Rule 403[7] and Request for a Hearing**

Rule 403 addresses a question distinct from Rule 702. Even when expert testimony is relevant and otherwise satisfies Rule 702, the Court may exclude it if its probative value is substantially outweighed by a danger of imposing unfair prejudice, confusing the issues, misleading the jury, providing undue delay, wasting time, or presenting needlessly cumulative evidence. Fed. R. Evid. 403; see also *Daubert*, 509 U.S. at 595.

State Farm argues that testimony untethered to a loss date would be irrelevant or would confuse and mislead the jury. [Dkt. 32 at 13-15]; *see* Fed. R. Evid. 401–403. That concern warrants

[7] *See* footnote 4.

exclusion when Summerall's testimony is offered to prove that a pleaded storm caused the condition, or that State Farm mishandled the claim. See *Daubert*, 509 U.S. at 595; *Viterbo*, 826 F.2d at 422. It does not warrant excluding every construction opinion, because testimony concerning physical roof conditions and the repairs they ordinarily require may help the jury resolve facts bearing on the claimed property damage. *See* Fed. R. Evid. 401, 402, 702(a). The limitations imposed above prevent Summerall from transforming that physical-condition testimony into an unsupported opinion on storm-specific causation, coverage, or bad faith. *See* Fed. R. Evid. 403; *Daubert*, 509 U.S. at 595.

The Coulters attribute some inconsistent answers to the Zoom format, Summerall's unfamiliarity with remote depositions, difficulty hearing questions, and difficulty reviewing material displayed on screen. [Dkt. 38 at 2-3]. The transcript confirms that Summerall was unfamiliar with Zoom. [Dkt. 38-1 at 77:1–13], but when counsel later asked whether any question had required clarification, Summerall could recall none. *Id.* at 81:1–5. More importantly, the Court's ruling does not rest on an isolated answer: Summerall repeatedly could not identify the storm that caused the claimed condition, and the record consistently shows that he supplied no claims-handling standard. *Id.* at 60:16–67:5, 70:2–11, 73:4–18, 79:4–18. The remote format may bear on the weight of particular phrasing, but it does not, in this Court's eye, supply missing qualifications or methodology. See *Hathaway*, 507 F.3d at 318–19; *Brown*, 705 F.3d at 536–37.

The Coulters request an evidentiary hearing before exclusion of any testimony. [Dkt. 38 at 4]. A district court may conduct a *Daubert* hearing, but it is not required to do so when the written record permits a sufficient on-the-record reliability inquiry and the court explains its ruling. *Carlson v. Bioremedi Therapeutic Systems, Inc.*, 822 F.3d 194, 201 (5th Cir. 2016); *Kumho Tire*, 526 U.S. at 152. Summerall's report, designation, and deposition, together with the parties' briefing

and exhibits, disclose the factual bases, qualifications, and reasoning relevant to each challenged opinion. The existing record is therefore sufficient, and the request for a separate hearing is denied. See *Carlson*, 822 F.3d at 201.

## IV. CONCLUSION

IT IS, THEREFORE, ORDERED AND ADJUDGED that Defendant State Farm Fire and Casualty Company's Motion to Strike Plaintiffs' Expert Bud Summerall [Dkt. 31] is **GRANTED IN PART** and **DENIED IN PART** as follows:

1. The motion is **DENIED** to the extent Summerall proposes, after a proper foundation, to testify about general roofing and construction principles; physical conditions he personally observed; conditions shown in authenticated photographs that are consistent with hail damage; and the nature and extent of physical roof repairs ordinarily required as a construction matter.

2. The motion is **presently DENIED** to the extent Summerall proposes to attribute damage to June 1, 2021, April 17, 2022, or any particular storm or date; or to use neighborhood roof replacements or damage to his own residence as expert proof that the Coulter property was damaged in the same event, but this testimony to be submitted to a jury must gain the approval outside the presence of the jury.

3. The motion is **GRANTED** as to opinions concerning the adequacy, reasonableness, or professionalism of State Farm's investigation or claim handling; whether State Farm should have denied the claim; whether State Farm complied with insurance-industry standards; or whether State Farm acted in bad faith or lacked an arguable basis.

**4.** The motion is **GRANTED** as to policy interpretation and coverage conclusions, including whether the Coulters are entitled to policy benefits or whether the roof constitutes a total loss under the policy. Summerall may discuss roof replacement only as a physical construction remedy, not as a coverage conclusion.

**5.** Summerall may rely on White's work only to the extent permitted by Rules 702 and 703, and he must show that he is not merely repeating White's conclusions. Whether White's report or photographs may be presented at trial will be determined by this Court prior to such testimony before the Court.

**6.** Plaintiffs' request for a separate evidentiary hearing is **DENIED**.

This Order does not resolve whether the claimed damage is covered, whether notice was timely, whether State Farm breached the policy, or whether either side is entitled to summary judgment. Those questions remain for separate determination.

SO ORDERED AND ADJUDGED this the 23rd day of September, 2026.

**/s/HENRY T. WINGATE**
**UNITED STATES DISTRICT COURT JUDGE**