**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**WILLIAM COULTER and KIM COULTER** **PLAINTIFFS**

**vs.** **CIVIL CASE NO. 2:24-CV-164-HTW-RPM**

**STATE FARM FIRE AND CASUALTY COMPANY and JOHN DOES 1-10** **DEFENDANTS**

---

**ORDER**

---

BEFORE THE COURT is Defendant State Farm Fire and Casualty Company's ("State Farm") *Motion for Summary Judgment or, Alternatively, Partial Summary Judgment* [Dkt. 33], filed on October 2, 2025. On November 7, 2025, Plaintiffs William and Kim Coulter ("The Coulters" or "Plaintiffs") filed their response and memorandum in opposition [Dkt. 40; Dkt. 41]. State Farm, on November 13, 2025, filed its reply [Dkt. 43]. Accordingly, the motion is now ripe for adjudication. Having considered the parties' submissions, the summary judgment record, and the applicable law, this Court GRANTS IN PART and DENIES IN PART State Farm's Motion for the reasons stated infra.

## I. JURISDICTION AND PROCEDURAL HISTORY

The Coulters filed this action in the Circuit Court of Lamar County, Mississippi, on May 31, 2024. [Dkt. 1-1 at 1]. Their complaint seeks $60,000 in contractual damages, and $1 million in punitive damages for State Farm's alleged bad-faith conduct. *Id.* at 7 .State Farm was served with the Summons and Complaint on September 18, 2024 [Dkt. 1, 1]. State Farm removed the action on October 17, 2024 [Dkt. 1].

William and Kim Coulter are Mississippi citizens; State Farm is incorporated and maintains its principal place of business in Illinois; and the amount in controversy exceeds $75,000, exclusive of interest and costs. *Id.* at 3–6; [Dkt. 1-1 at 1, 7]. This Court, accordingly, has subject-matter jurisdiction over this lawsuit under 28 U.S.C. § 1332(a)[1]. State Farm complied with the removal procedure prescribed by 28 U.S.C. § 1446[2]. Removal thus was proper under 28 U.S.C. § 1441, and the citizenship of the fictitious defendants does not affect that conclusion[3].

Plaintiffs' Complaint alleges that hailstorms on June 1, 2021, and April 17, 2022, damaged their residence at 6 Chandeleur Point in Hattiesburg, Mississippi. [Dkt. 1-1 at 2–3]. They state that they submitted an insurance claim to State Farm, seeking payment for necessary repairs, but that State Farm denied the claim and failed to pay benefits they contend were due under their insurance policy. *Id*. at 3-4.

The Complaint asserts three claims against State Farm. Count One alleges breach of contract; Count Two requests declaratory and permanent injunctive relief; and Count Three alleges bad faith and seeks extracontractual and punitive damages. [Dkt. 1-1 at 4–6]. Count Four separately asserts negligence against unidentified John Does 1–10. *Id.* at 6–7.

Although State Farm's motion for summary judgment does not address the negligence claim nominally asserted against John Does 1–10, those defendants have never been identified or

[1] Section 1332(a)(1) gives federal district courts original jurisdiction over civil actions in which the amount in controversy exceeds $75,000, exclusive of interest and costs, and the action is between citizens of different States. A corporation is a citizen of its state of incorporation and the state of its principal place of business. 28 U.S.C. § 1332(a)(1), (c)(1).

[2] Section 1446(a) requires a removing defendant to file in the federal district court a notice of removal containing a short and plain statement of the grounds for removal, together with copies of all process, pleadings, and orders served on the defendant. 28 U.S.C. § 1446(a). Section 1446(b)(1) generally requires the notice to be filed within thirty days after service of the initial pleading or summons. 28 U.S.C. § 1446(b)(1).

[3] Section 1441(a) permits removal of a civil action over which the federal district courts have original jurisdiction. In determining removability under § 1332(a), "the citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. § 1441(a), (b)(1).

served. The Case Management Order required the parties to amend their pleadings or join additional parties by February 24, 2025, and discovery closed on September 18, 2025. [Dkt. 11]; [Text-Only Order dated July 15, 2025]. The Coulters neither sought leave to substitute named defendants for the fictitious defendants, nor demonstrated good cause for failing to do so. See Fed. R. Civ. P. 4(m); *Colle v. Brazos County*, 981 F.2d 237, 243 n.20 (5th Cir. 1993); *Clark v. McMillian*, 932 F. Supp. 789, 794 (S.D. Miss. 1996); see also *Thornton v. Rankin County*, No. 3:13-cv-620-DPJ-FKB, slip op. at 18 n.9 (S.D. Miss. Apr. 14, 2015) (dismissing claims against unidentified and unserved Doe defendants after discovery concluded). Accordingly, the Court dismisses without prejudice all claims asserted against John Does 1–10.

## II. FACTUAL BACKGROUND

### A. The Policy

State Farm issued the Coulters a homeowners policy (the "Policy"), effective from May 1, 2021, to May 1, 2022. [Dkt. 33-1 at 2, 7]. Coverage A insures against "accidental direct physical loss" to the dwelling unless the policy excludes or limits the loss. *Id.* at 34. The policy requires an insured, after a loss to which the insurance may apply, to cooperate with State Farm's investigation and to "give immediate notice" to State Farm or its agent. *Id.* at 42.

The Policy's declaration page identifies the Coulters' dwelling *Id.* at 7. The declarations provide $546,100 in Coverage A dwelling coverage and identify an all-loss deductible of one percent, or $5,461. [Dkt. 33-1 at 2–3]. The Policy provides: "We will pay for accidental direct physical loss to the property described in Coverage A, unless the loss is excluded or limited in SECTION I – LOSSES NOT INSURED – or otherwise excluded or limited in this policy." *Id.* at 34. Until repair or replacement is completed, however, State Farm must pay only the actual cash value of the damaged property, subject to the applicable limit and the cost of repair or replacement.

*Id.* at 40.[4] The Policy's appraisal provision applies when the parties disagree about the amount of loss. *Id.* at 43. The appraisal provision confines the appraisers and any umpire to determining the amount of loss; it does not authorize them to decide causation, coverage, or other legal or contractual questions. *Id.* at 43–44.

**B. The May and June 2021 Claims**

The claim history begins with a loss the Coulters attributed to a hailstorm on May 24, 2021. State Farm inspected the property in connection with that claim on July 12, 2021, and reported no observable hail or wind damage to the roof or exterior; accordingly, on July 14, 2021, State Farm denied that claim. *Id*. The Coulters' Complaint does not seek benefits for the May 24 loss.

On November 30, 2021, a contractor from the company "Apex Roofing" reported to State Farm a separate claim filed by the Coulters. This claim allegedly arose from a hailstorm on June 1, 2021. [Dkt. 33-2 at 14; Dkt. 33-4]. State Farm inspected the property on December 13, 2021, with an Apex representative present. [Dkt. 33-2 at 10]. Anthony Patrick, an external claim representative who performed the inspection for State Farm, reported that the dwelling's approximately sixteen-year-old architectural shingles were in average condition and that no roof slope displayed storm-related damage or visible signs of hail damage. [Dkt. 33-2 at 10; Dkt. 33-9]. State Farm denied payment that day after advising the Coulters that the inspection revealed no covered accidental direct physical loss to the roof. [Dkt. 33-9].

[4] The policy defines "actual cash value" as "the value of the damaged part of the property at the time of loss, calculated as the estimated cost to repair or replace such property, less a deduction to account for pre-loss, calculated as the estimated cost to repair or replace such property, less a deduction to account for pre-loss depreciation." The depreciation calculation may consider age, condition, reduction in useful life, and pre-loss wear, tear, or deterioration. [Dkt. 33-1 at 23].

The Coulters contested the denial of their June 2021 claim. On June 10, 2022, a representative[5] of the Coulters' local State Farm agent's office contacted State Farm's claims department to ask what information the Coulters would need to submit to obtain another inspection. State Farm responded that it would first review an itemized repair estimate and photographs showing damage not documented during the initial inspection. If those materials appeared to warrant further investigation, State Farm's field personnel would decide whether to reinspect the property. [Dkt. 33-2 at 8–9]. The materials later submitted by the Coulters consisted of photographs and a roof-replacement estimate prepared by Mickey Carney ("Carney"), a general adjuster with Central Adjustment Company. *Id.* at 8; [Dkt. 33-10]. Carney estimated the cost of replacing the roof at $29,796.18. His estimate identified no date of loss and applied no depreciation; accordingly, it listed both the replacement-cost value and the actual cash value as $29,796.18. [Dkt. 33-10 at 1–4].

After reviewing Carney's photographs, State Farm concluded that the holes depicted in the photographs were not hail impacts; instead, said State Farm, the holes appeared to result from "shingle blistering" or possible animal damage. [Dkt. 33-2 at 8]. When State Farm spoke with Carney on June 27, 2022[6], Carney did not identify the type of roof damage, nor state definitively what caused it. *Id.* State Farm advised William Coulter on June 28, 2022, that the photographs did not show hail damage and closed the claim. *Id.* at 7.

Thereafter, on December 26, 2022, Walter "Dickie" White ("White") of Titan Roofing Company inspected the property, and recommended replacement of the roof, gutters, and rear downspout. [Dkt. 33-11; Dkt. 38-1 at 38:23–39:2]. White's one-page report did not identify a

---

[5] This representative is identified in the claim notes only as "Tim".

[6] State Farm's Memorandum in support of summary judgment mistakenly lists this date as June 27, 2021.

specific hailstorm or date of loss. [Dkt. 33-11]. State Farm received the report and photographs in February 2023. [Dkt. 33-2 at 5–6]. The Coulters then submitted a written appraisal demand. [Dkt. 33-12]. State Farm denied appraisal on March 8, 2023, explaining that the dispute—no covered accidental physical loss versus a full roof replacement—concerned coverage rather than the amount of an agreed covered loss. [Dkt. 33-2 at 4–5; Dkt. 33-13].

On December 18, 2023, a representative from the office of the Coulters' State Farm agent reported that, according to William Coulter, an engineer had reviewed the allegedly damaged roof. State Farm responded that it had not received an engineer's report but would review one if the Coulters submitted it. [Dkt. 33-2 at 5]. The record does not reflect that the Coulters submitted such a report.

Later in December 2023, the Coulters' agent followed up regarding additional Titan Roofing photographs submitted in support of their request for a second inspection. State Farm explained that the photographs received by fax were in black and white, and the agent agreed to resend them by email. After reviewing the additional photographs, State Farm concluded that they did not show hail damage attributable to the June 1, 2021 loss and again declined to reinspect the property. [Dkt. 33-2 at 4–5]. In January 2024, William Coulter continued to dispute State Farm's decision, arguing that every home on his street, except those insured by State Farm, had received a new roof. *Id.* at 3.

**C. The April 2022 Allegation**

The summary judgment record identifies no claim that the Coulters submitted for an April 17, 2022 loss. State Farm's spring-2022 entries concern renewed handling of claim number 24-27T2-03Z, which carries the June 1, 2021 date of loss. [Dkt. 33-2 at 6–8, 14]. The entries on which the Coulters rely for a supposed April 2022 claim appear in the file for the earlier May 24, 2021,

claim, not in a distinct April 2022 claim file. [Dkt. 41 at 6; Dkt. 43 at 3 n.3]. Asked whether he submitted an April 17, 2022, claim, William Coulter testified that he was "not sure" and referred generally to whichever storm had damaged neighborhood homes. [Dkt. 33-3 at 17:23–18:3]. The Plaintiffs' Complaint, filed May 31, 2024, is the first record material that identifies April 17, 2022, as a separate date of loss. [Dkt. 1-1 at 2–3].

The Coulters designated Bud Summerall as their only expert. [Dkt. 19; Dkt. 33-14]. Summerall inspected the roof only from the ground and could not identify which storm caused the conditions he allegedly observed. [Dkt. 38-1 at 30:18–31:14, 60:16–67:5, 73:4–18]. In its separate evidentiary Order, the Court permits Summerall, after a proper foundation, to testify about physical roof conditions consistent with hail and the construction remedy those conditions ordinarily require. This Court barred Summerall from opining whether the June 1, 2021, April 17, 2022, or another particular storm caused the damage. The Court also excluded opinions about policy coverage and State Farm's claim handling. [Dkt. 55].

State Farm designated as their experts engineer Mark Watson ("Watson") and construction consultant Michael Strayer ("Strayer"). [Dkt. 33-17]. Watson allegedly observed marks on nineteen shingle tabs that could have resulted from hail impacts. He nevertheless concluded that age and weathering, rather than hail, had caused those conditions. [Dkt. 33-18 at 6, 12]. Strayer, likewise, identified a limited number of marks that might reflect hail impacts, but he concluded that the roof showed no hail damage attributable to either alleged date of loss (June 1, 2021/April 17, 2022), and that wear and age-related deterioration primarily accounted for its condition. [Dkt. 33-19 at 3–6].

## III. LEGAL STANDARD

Rule 56[7] of the Federal Rules of Civil Procedure requires summary judgment when the movant shows that no genuine dispute of material fact exists and that the movant is entitled to judgment as a matter of law. A dispute is genuine only when the evidence would permit a reasonable jury to return a verdict for the nonmovant; a fact is material only when it might affect the outcome under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court views the evidence and draws reasonable inferences in the nonmovant's favor, but it may not weigh evidence or make credibility determinations. *Id.* at 255.

The movant may satisfy its initial burden by identifying an absence of evidence on an element for which the nonmovant bears the trial burden. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 325 (1986). The nonmovant must then identify specific record evidence that would permit a favorable verdict; conclusory allegations, unsubstantiated assertions, and a scintilla of evidence do not suffice. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The Court need not accept a version of events that the record as a whole could not lead a rational factfinder to adopt. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).[8]

Federal law supplies the summary-judgment standard, while Mississippi substantive law governs the parties' insurance dispute. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Hanna v. Plumer*, 380 U.S. 460, 465 (1965). Under Mississippi law, an insurance policy is a contract enforced according to its written terms when those terms are clear. *Corban v. United Services Automobile Ass'n*, 20 So. 3d 601, 609 (Miss. 2009). The insured bears the burden to

---

[7] Federal Rule of Civil Procedure 56(a) provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

[8] Rule 56(c)(1) requires a party asserting that a fact is genuinely disputed to cite particular record materials or show that the cited materials do not establish the absence of a genuine dispute. The Court may consider other record materials, but it need consider only the cited materials. Fed. R. Civ. P. 56(c)(1), (3).

establish that a claim falls within the policy's coverage; the insurer bears the burden to prove an exclusion or limitation. *Architex Ass'n, Inc. v. Scottsdale Insurance Co.*, 27 So. 3d 1148, 1157 (Miss. 2010); *Broussard v. State Farm Fire & Casualty Co.*, 523 F.3d 618, 624–25 (5th Cir. 2008).

## IV. DISCUSSION

### A. Breach of Contract and Covered Hail Damage

State Farm argues that the Coulters cannot prove that hail caused covered roof damage on either pleaded date after the Court's evidentiary ruling limits Summerall's testimony. [Dkt. 34 at 10–13; Dkt. 43 at 2–3]. This Court's ruling, however, excludes Summerall's storm-specific causation opinion; it does not erase the other evidence in the summary judgment record. Rule 56 requires the Court to consider evidence that can be presented in an admissible form at trial, even if the material has not yet been authenticated or submitted in that form. *Lee v. Offshore Logistical & Transp., L.L.C.,* 859 F.3d 353, 355 (5th Cir. 2017); *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016).

The evidence before this Court points in both directions. State Farm's December 13, 2021, inspection found no visible hail or storm damage. [Dkt. 33-2 at 10; Dkt. 33-9]. Carney then inspected the roof and photographed it on June 16, 2022. His image log labels several conditions as impacts or apparent hail hits, including what he described as marble-sized hits, and his estimate calls for a full roof replacement. *Id.* at 2, 20–21. White's December 2022 report likewise records hail-related conditions on every slope and recommends replacement of the roof, gutters, and rear downspout. [Dkt. 33-11].

State Farm disputes those characterizations and relies on Carney's own refusal to state a definitive cause for the damage. [Dkt. 33-2 at 8]. In this Court's eye, this conflict concerns the weight of the evidence, not whether a conflict exists. *Anderson*, 477 U.S. at 255.

The expert evidence also contains a factual conflict. This Court has held that Summerall may testify, after a proper foundation, that the physical conditions he personally observed and the conditions shown in authenticated photographs are, in his opinion, consistent with hail impact, although he may not attribute them to a particular storm. [Order on Mot. to Strike]. Watson, in turn, identified nineteen shingle tabs with conditions that could possibly be associated with hail impact; he concluded that age and weathering provided the better explanation. [Dkt. 33-18 at 6, 12]. Strayer also acknowledged a limited number of possible hail-impact indicators, but concluded that they did not justify replacement and could not be tied to the pleaded dates. [Dkt. 33-19 at 4–6]. A jury may accept State Farm's explanation, but Rule 56 does not permit the Court to select one explanation from competing reasonable interpretations of the physical evidence. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150–51 (2000); *Anderson*, 477 U.S. at 255.

The timing evidence, although not conclusive, supplies more than speculation. William Coulter testified that State Farm paid for a new roof after Hurricane Katrina (August 2005) and that he made no repairs to that roof before May 24, 2021. [Dkt. 33-3 at 19:8–18]. He further testified that, after "that severe hailstorm," he used "a silicone gun" to put "the shingles back in place." *Id.* at 19:19–24, 20:1–6. Coulter declined to identify an exact repair date and testified that the inspector who advised him to perform the work was, as he recalled, Dickie White. *Id.* at 20:2–12. When asked about the two dates pleaded in the Complaint, Coulter acknowledged that "we had a slew of storms coming through during that time frame," but stated that "those dates seem like the correct time." *Id.* at 17:13–22. He was "not sure" whether the Coulters submitted a separate claim for the April 17, 2022 storm, explaining that "whatever one we submitted the claim was, was the major storm where all the homes were damaged here." *Id.* at 17:23–18:3. Viewed together with State Farm's December 2021 determination that its inspection revealed no covered physical

loss and Carney's June 2022 photographs depicting the roof's subsequent condition, this testimony permits—although it does not compel—a finding that covered hail damage occurred during the policy period. [Dkt. 33-9]; [Dkt. 33-10 at 4–23]. The Court must draw that reasonable inference in the Coulters' favor at this stage. *Reeves*, 530 U.S. at 150–51.

State Farm relies on decisions granting judgment when the insured had no admissible evidence connecting complex property damage to a covered event. *See Parker v. State Farm Fire & Casualty Co.*, No. 2:22-CV-45-HSO-BWR, 2023 WL 4425599, at *3–4 (S.D. Miss. May 22, 2023); *Duchmann v. State Farm Fire & Casualty Co.*, No. 1:23-CV-261-HSO-BWR, 2024 WL 4989320, at *6–7 (S.D. Miss. Dec. 5, 2024). Those cases do not require judgment whenever an insured's designated expert cannot identify a storm date. Unlike the evidentiary vacuum described there, this record contains temporally separated inspections, alleged contemporaneous photographs and observations, limited admissible expert testimony about hail-consistent conditions, and admissions by State Farm's experts that some locations could be associated with hail impact. [Dkt. 33-2 at 10; Dkt. 33-10 at 20–21; Dkt. 33-18 at 6, 12; Dkt. 33-19 at 4–6; Order on Mot. to Strike]. The Court, therefore, denies summary judgment on whether a covered hail loss occurred.

### B. Notice of the Alleged April 17, 2022 Loss

The Policy required the Coulters to give immediate notice of a potentially covered loss to State Farm or its agent; it did not expressly require a new claim number for each alleged occurrence. [Dkt. 33-1 at 42]. The relevant questions are whether the Coulters provided State Farm sufficient notice of the alleged April 17, 2022 loss and, if they did not, whether the lack of notice prejudiced State Farm's ability to investigate that loss. *See* [Dkt. 34 at 13–14]; [Dkt. 43 at 3–5]. Courts generally enforce a policy's notice provision "as written" and defer from transforming it

into a formal claim-filing requirement that the policy itself does not impose. *See Tavas v. State Farm Fire & Casualty Co.*, 776 F. Supp. 3d 508, 519–20 (S.D. Miss. 2025). State Farm's reliance on authority governing claims-made policies is misplaced because this homeowners policy insures "accidental direct physical loss occurring during the policy period". [Dkt. 33-1 at 2, 34].

The present record does not show that the Coulters expressly identified April 17, 2022, as a second date of loss before filing suit. State Farm's spring-2022 claim notes concern the June 1, 2021 claim, and William Coulter testified that he was unsure whether the Coulters submitted a separate April claim. [Dkt. 33-2 at 6–9, 14; Dkt. 33-3 at 17:23–18:3]. The same notes show, however, that the Coulters' agent contacted State Farm on June 10, 2022, about a second inspection; State Farm requested an itemized estimate and photographs; and it received and reviewed Carney's June 2022 materials. [Dkt. 33-2 at 8–9]. State Farm then chose to evaluate the new materials without reinspecting the roof. *Id.* at 7–8.

Under Mississippi law, a notice provision that does not expressly make timely notice a condition precedent or declare coverage forfeited operates as a condition subsequent; the insurer must show substantial prejudice from the delay. *Capital City Insurance Co. v. Ringgold Timber Co.*, 898 So. 2d 680, 682–83 (Miss. Ct. App. 2004). Whether delay prejudiced the insurer ordinarily presents a fact question. *Id.* at 683; *Harris v. American Motorist Insurance Co.*, 240 Miss. 262, 274–75, 126 So. 2d 870, 875–76 (1961). Timely notice protects an insurer's opportunity to investigate, but a failure to provide notice does not work a forfeiture absent prejudice. *Jackson v. State Farm Mutual Automobile Insurance Co.*, 880 So. 2d 336, 341, 343 (Miss. 2004).

State Farm has not established substantial prejudice as a matter of law. It asserts that it lost the opportunity to inspect an April loss, yet the undisputed notes show that the roof remained available when the Coulters sought another inspection in June 2022, roughly two months after the

alleged event. [Dkt. 33-2 at 8–9]. State Farm also possessed its December 2021 inspection as a pre-event baseline and received photographs taken on June 16, 2022. *Id.* at 10; [Dkt. 33-10 at 20–21]. A jury could find that a June 2022 reinspection would have allowed State Farm to evaluate any intervening condition and that its decision not to reinspect, rather than the lack of a separate claim number, caused the later difficulty in assigning a date. *See Capital City*, 898 So. 2d at 683. Accordingly, this Court denies summary judgment on the April-notice defense.

**C. Actual Cash Value and Proof of Damages**

The Coulters' roof has not been replaced. The Policy, therefore, presently limits any covered recovery to actual cash value—the estimated cost to repair or replace the damaged property, less depreciation attributable to its condition before the loss. [Dkt. 33-1 at 23, 40; Dkt. 33-3 at 19:14–21:18]. The declarations impose a $5,461 deductible for each occurrence. [Dkt. 33-1 at 3].

Plaintiffs' Complaint seeks $60,000 in actual damages, less what the Coulters identify as a $6,405 deductible, and its prayer requests a $60,000 money judgment. [Dkt. 1-1 at 4, 7]. That demand does not establish the amount of the covered loss. Pleadings are not summary judgment evidence. *Wallace v. Texas Tech University*, 80 F.3d 1042, 1047 (5th Cir. 1996). The Coulters rely on Carney's line-item estimate, which values the proposed repairs at $29,796.18. The estimate contains separate columns for replacement cost, depreciation, and actual cash value but assigns no depreciation to any item; it therefore lists both replacement-cost value and actual cash value as $29,796.18. [Dkt. 33-10 at 1–4]. If the factfinder accepted the estimate in full and found that only one covered occurrence caused the damage, application of the Policy's $5,461 deductible would produce a net contractual recovery of $24,335.18. The ultimate amount, however, depends on

which items constitute covered damage, the appropriate depreciation, and the application of the Policy's per-occurrence deductible.

State Farm argues that the Coulters' failure to designate an expert who calculated depreciation defeats their claim for policy benefits. [Dkt. 34 at 14–17; Dkt. 43 at 6–7]. Decisions in this District, however, have granted summary judgment on unrepaired-property damages when the insured offered no competent evidence of depreciation or actual cash value. *See Hebbler v. State Farm Fire & Casualty Co.*, No. 1:23-CV-247-HSO-BWR, 2024 WL 5161857, at *5 (S.D. Miss. Dec. 18, 2024); *Estate of Lowry v. State Farm Fire & Casualty Co.*, No. 1:23-CV-325-HSO-RPM, 2024 WL 5150644, at *4–5 (S.D. Miss. Dec. 17, 2024). The record evidence here, however, does not contain a complete absence of actual-cash-value evidence. State Farm may challenge Carney's decision to assign no depreciation to an approximately sixteen-year-old roof, and Strayer identifies several allegedly inaccurate or inflated line items. [Dkt. 33-2 at 10; Dkt. 33-19 at 4–6]. Those criticisms create disputes concerning the estimate's reliability and the amount of loss; they do not establish that State Farm is entitled to judgment as a matter of law.

At summary judgment, evidence need not be presented in the form required at trial, provided that its substance can be presented in an admissible form. *See Lee*, 859 F.3d at 355; *LSR Consulting*, 835 F.3d at 534. Carney can authenticate the estimate and testify concerning its preparation and matters within his personal knowledge. Authentication alone, however, does not qualify Carney to offer technical opinions concerning hail causation, the necessity or scope of replacement, depreciation, or the amount of loss. This Court reserves objections concerning Carney's qualifications and the permissible scope of his trial testimony.

Mississippi law treats monetary damages as a remedy for breach rather than an element of the claim. *Business Communications, Inc. v. Banks*, 90 So. 3d 1221, 1225–27 (Miss. 2012). The

Coulters must prove any compensatory damages with reasonable certainty. *Id.* at 1226. State Farm, therefore, is not entitled to summary judgment on the breach-of-contract claim, nor on the Coulters' request for compensatory policy benefits. Any recovery will be limited to the actual cash value of covered damage established through admissible evidence, less the deductible required by the Policy.

### D. Declaratory, Injunctive, and Appraisal-Related Relief

The request for a declaration that policy benefits are due depends on the same unresolved coverage and valuation questions as the contract claim. The Court, thus, denies summary judgment on declaratory relief.[9] *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 286–88 (1995) (describing the discretionary declaratory remedy).

The request for a permanent injunction does not survive. The complaint seeks money for a past denial and offers no evidence of an imminent injury that damages or declaratory relief cannot remedy. [Dkt. 1-1 at 4–7]. A permanent injunction requires success on the merits, irreparable injury, inadequacy of legal remedies, a favorable balance of hardships, and consistency with the public interest. *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156–57 (2010). The Coulters have not identified evidence satisfying those equitable requirements. State Farm is not entitled to summary judgment on the request for permanent injunctive relief.

The appraisal history also does not establish an independent breach. The undisputed record shows that State Farm explained the appraisal procedure after the Coulters asked about next steps, the Coulters demanded appraisal, and State Farm denied the demand. [Dkt. 33-2 at 5–7; Dkt. 33-

[9] The Declaratory Judgment Act provides that, in a case of actual controversy within its jurisdiction, a federal court "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a).

12; Dkt. 33-13]. The Policy authorizes appraisal when the parties disagree over the amount of loss, but withholds authority to decide coverage and other factual or legal questions. [Dkt. 33-1 at 43–44]. At that time, the parties disputed whether any covered accidental direct physical loss existed, not merely the price of agreed damage. An appraisal determines amount, not liability under the policy. *Munn v. National Fire Insurance Co.*, 115 So. 2d 54, 58 (Miss. 1959). State Farm's refusal to submit that coverage dispute to appraisal, therefore, does establish that State Farm lacked an arguable basis for its claim-handling decision.

### E. Bad Faith, Extracontractual Damages, and Punitive Damages

The survival of the Coulters' breach of contract claim does not require the bad-faith claim to proceed. An insurer must conduct a prompt and adequate investigation and make a reasonable, good-faith decision based on that investigation. *James v. State Farm Mutual Automobile Insurance Co.*, 743 F.3d 65, 70–71 (5th Cir. 2014). When the insurer articulates an arguable factual or legal basis, the insured must produce evidence that no arguable basis existed and that the insurer's conduct amounted to an intentional wrong, insult, abuse, or gross negligence constituting an independent tort. *Id.* at 70; *Essinger v. Liberty Mutual Fire Insurance Co.*, 529 F.3d 264, 271–72 (5th Cir. 2008). Whether undisputed facts supply an arguable basis is a question of law. *Broussard*, 523 F.3d at 628.

State Farm had an arguable factual basis when it denied the June 2021 claim. A July 12, 2021, inspection performed in connection with the earlier May claim reported no hail or wind damage. [Dkt. 33-6 at 2; Dkt. 33-7]. State Farm inspected again on December 13, 2021, with an Apex representative present, documented the roof, and found no visible hail or storm damage. [Dkt. 33-2 at 10; Dkt. 33-22]. When the Coulters later submitted Carney's estimate and photographs, State Farm reviewed them and contacted Carney; he declined to state definitively

what type of damage appeared on the roof. [Dkt. 33-2 at 8]. State Farm later reviewed White's report and additional photographs before maintaining its coverage position. *Id.* at 3–6. Those facts constitute credible evidence supporting State Farm's decision even though a jury may ultimately reach a different conclusion on coverage. *See Blue Cross & Blue Shield of Mississippi, Inc. v. Campbell*, 466 So. 2d 833, 851 (Miss. 1984); *James*, 743 F.3d at 70–71.

The later disagreement among the parties' witnesses reinforces that the contract claim presents a fact question, but it does not retroactively eliminate the basis State Farm had when it made its decision. A denial must be evaluated from the reasons communicated and the information available to the insurer at the time; litigation opinions cannot manufacture a basis that did not then exist. *Sobley v. Southern Natural Gas Co.*, 210 F.3d 561, 564 (5th Cir. 2000). Here, the contemporaneous inspections and review already supplied one. The Court therefore does not rely on Watson's or Strayer's post-suit opinions to create an arguable basis.

Nor does the refusal to reinspect or submit the dispute to appraisal establish the extreme investigative failure required for bad faith. Mississippi requires more than negligence; a proper investigation must have been capable of easily showing that the insurer's defenses were meritless. *United Services Automobile Ass'n v. Lisanby*, 47 So. 3d 1172, 1178 (Miss. 2010). State Farm reviewed the additional submissions, spoke with Carney, and explained why it regarded the dispute as one of coverage rather than amount. [Dkt. 33-2 at 3–8; Dkt. 33-13]. The competing evidence may show that State Farm reached the wrong coverage decision; it does not permit a reasonable jury to find that a proper investigation would easily have exposed State Farm's position as meritless. *See Lisanby*, 47 So. 3d at 1178. A recent hail-loss decision reached the same distinction: a battle of experts may support trial on breach, while the facts of the breach may be insufficient to

show the absence of an arguable basis. *Steadman v. State Farm Fire & Casualty Co.*, No. 2:25-CV-73-HSO-RPM, slip op. at 13–16 (S.D. Miss. May 14, 2026).

Mississippi law permits punitive damages only when the claimant proves by clear and convincing evidence that the defendant acted with actual malice, gross negligence evidencing willful, wanton, or reckless disregard for the safety of others, or actual fraud. Miss. Code Ann. § 11-1-65(1)(a). *Mitchell v. State Farm Fire & Casualty Co.*, 954 F.3d 700, 708–09 (5th Cir. 2020); *Essinger*, 529 F.3d at 271–72. The record here contains no evidence from which a jury could find actual malice, fraud, or gross negligence evidencing willful, wanton, or reckless disregard by clear and convincing evidence. State Farm is therefore entitled to summary judgment on Count Three and on all demands for bad-faith, extracontractual, and punitive damages, including attorney's fees sought on those theories.

## V. CONCLUSION

The record contains genuine disputes about whether hail caused covered roof damage during the policy period and about the amount of any resulting actual-cash-value loss. State Farm, though, has not established substantial prejudice from the Coulters' delay in identifying April 17, 2022, as a date of loss. The issues remaining for trial are the following: (1) whether hail caused covered damage to the Coulters' roof during the Policy period; (2) whether the Coulters provided sufficient notice of the alleged April 17, 2022 loss; (3) whether any delay in providing that notice substantially prejudiced State Farm's ability to investigate; (4) whether State Farm breached the Policy by denying benefits; and (5) the actual cash value of any covered loss, less the deductible required by the Policy. The undisputed claim history, however, supplied State Farm an arguable basis for its coverage decision; this record, thus, does not support permanent injunctive relief,

extracontractual or punitive damages; nor an independent breach based on State Farm's refusal to submit the coverage dispute to appraisal.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that Defendant State Farm Fire and Casualty Company's Motion for Summary Judgment or, Alternatively, Partial Summary Judgment [Dkt. 33] is **GRANTED IN PART** and **DENIED IN PART**.

The motion is **DENIED** as to Count One, including the Coulters' request for compensatory policy benefits, and as to Count Two's request for a declaration that a covered hail loss occurred and policy benefits are due under the Policy. These claims may go forward.

The motion is **GRANTED** as to Count Two's request for permanent injunctive relief; any independent breach theory based solely on State Farm's refusal to submit the coverage dispute to appraisal; Count Three; and all demands for bad-faith, extracontractual, and punitive damages. Those claims are **DISMISSED WITH PREJUDICE.**

The parties herein must settle their differences at a trial.

**SO ORDERED this the 29th day of September, 2026.**

**/s/HENRY T. WINGATE**
**UNITED STATES DISTRICT COURT JUDGE**